FRANCIS SHERIDAN, APPELLANT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, RESPONDENTS.

*Witness — credit due to uncontradicted statements of — how affected by interest in suit.*

The rule, that where a disinterested witness testifies to the existence of a fact within his own knowledge, and nothing appears to discredit his statement, which is not inherently improbable, neither the court nor the jury can arbitrarily reject it, does not apply to the evidence of a person whose interest it is to establish the truth of what he swears to, as where he is to receive the fruits of the litigation, either partially or wholly, in case it may prove successful. (BRADY, J., dissenting.)

The uncontradicted evidence of a party, or other interested witness, is not necessarily conclusive upon either the court or the jury. (BRADY, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury, and from an order denying a motion for a new trial.

*Ch. P. Shaw*, for the appellant.

*D. J. Dean*, for the respondents.

DANIELS, J. :

The demands in suit arose out of the performance of work and materials used in repairing some of the public buildings in the county of New York. The work was done and the materials supplied by Morgan Jones, as a plumber, and the action was brought by him for the recovery of the demands. During its pendency it was claimed that he assigned them to the plaintiff, who for that reason was substituted in his place as plaintiff in the action. It appeared by the evidence that a considerable portion of the work had been done, and the materials for it furnished by the assignor and persons in his employment, and that the bills had been rendered to the board of supervisors, while that body was in existence, and that they were audited and allowed by it. From the charge, it is very evident that the court took that view of the case, and as it appeared generally that work and materials of the description mentioned had been performed and furnished and the bills had been audited by the board, that was held to be conclusive in favor of their allowance, unless there was evidence of positive fraud perpetrated by Jones upon the county through collusion with the board. The learned judge then added : " But I do not understand any such defense to be set up in the pleadings, or that there was any such attempt to defraud the county of New York by the auditing of these bills. If these repairs have not been done, if this work charged for in these bills has not been rendered or performed, if there was fraud in it, it appears to me that the proper officials should have investigated it under the circumstances and found out where the fraud was. But as I said before, I do not understand it to be set up in the answer that this was a fraudulent scheme to get money out of the public treasury." From these portions of the charge it is entirely clear, that the jury were not left at liberty to infer that

any question of fraud in the performance of the work, or the allowance of the bills, was submitted to their consideration. The charge on the contrary was, that the proof of performance and the auditing of the bills were conclusive in the plaintiff's favor, unless fraud should be shown, and that nothing of that kind had been alleged or proved. That was as favorable a statement of the law of the case as the plaintiff could require. And if improper evidence had been given, or the plaintiff had been required to prove more than he was obliged to on this subject, he could have been injured by neither after this unequivocal statement of the case in his favor. The court considered the case as having been made out by the evidence in all respects, except that of the right of the plaintiff to maintain the action. For it was stated to the jury that "the only real issue which appears to be raised by the pleadings and the proof is, whether this plaintiff is the real party in interest." The court then stated that a man could give his property away, and after doing it could not revoke the gift. But if it was a mere ruse or subterfuge and not a real transaction, the plaintiff would not be entitled to recover. The production of an assignment would ordinarily be sufficient to support a transfer, but if the jury believed "from the evidence that the real party in interest in this suit is Morgan Jones, and that this is a sham transaction, then I think the plaintiff should be defeated in the action. If it is otherwise, if the plaintiff, the assignee, is the real party in interest, then I think, under the evidence, the plaintiff is entitled to recover." This, it will be perceived, was concisely and clearly presented as the only point to be settled by the jury. The plaintiff claimed that it should not have been submitted to them, but that a verdict should be directed in his favor, and excepted to the refusal of the court so to hold. An exception was also taken in general terms to the refusal of the court to charge four different and several propositions presented by one request in his favor. In the main they were charged, and for that reason this general exception was insufficient to present the point of variance between them and the instructions given. But if it could raise that question, there is no substantial ground presented for sustaining it. For the court did charge that the assignment was sufficient ordinarily to support a transfer. And that the assignor could give his claim away. But

it was not charged that there was no evidence to overcome its *bona fide* character, and that the testimony of the witnesses sustained it. In those respects the case was submitted to the jury and no exception was made to the propriety of that course, unless the one taken in general terms was sufficient. And that, under the authorities, cannot be held to be the case. If the plaintiff's counsel had been dissatisfied with what was said by the court, he should have excepted explicitly to the submission of those facts to the jury. (*Walsh* v. *Kelly*, 40 N. Y., 556; *Requa* v. *City of Rochester*, 45 id., 130; *Ayrault* v. *Pacific Bank*, 47 id., 570.) And that he did not do.

But if he had done that, perhaps no more would have been accomplished than was already secured by excepting to the refusal to direct a verdict in the plaintiff's favor. That presented the point as to the right of the plaintiff to recover as a matter of law. And it is maintained that that had been established by the evidence. The controversy was finally limited to the question, whether the demands had been actually transferred to the plaintiff, and all the evidence given in support of that was elicited from the plaintiff himself and his assignor. Where a disinterested witness testifies to the existence of a fact as within his own knowledge, and nothing appears tending to discredit his statement, and it is not inherently improbable, neither the court nor the jury can arbitrarily reject it. But the same rule does not apply to the evidence of a person whose interest it is to favor himself by what he may swear to. That circumstance alone is sufficient to subject his statement to suspicion. The rule of the common law was so stringent upon this subject that it rejected the evidence of parties and other interested witnesses, as unworthy of credit, because of the uncertainty of their statements being truthful. This has been abrogated by statute so far as to render them competent witnesses, leaving the question of their credit to be determined as an ordinary matter of fact in the case; and under this change, where the interest may be a controlling one, whether the witness may be believed, notwithstanding its existence, must now be a matter of fact to be determined by the jury. The circumstance that the witness is to receive the fruits of the litigation, either partially or wholly, in case it may prove successful, will certainly, in some

instances, be sufficient to warrant the conclusion that the evidence given by him is not reliable. And that must be more particularly so when the proof of the fact in dispute is not possibly within the knowledge of the opposing party, and might, if true, be corroborated, as it could have been in this case, by further evidence under the control of the party insisting upon it.

The conclusion that the uncontradicted evidence of a party or other interested witness is not necessarily controlling, received the direct sanction of the Court of Appeals in *Elwood* v. *Western Union Telegraph Co.* (45 N. Y., 549), for it was there said by Judge RAPALLO, who delivered the opinion of the court, that the rule as to the effect of the evidence given by witnesses "is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. The general rules laid down in the books at a time when interest absolutely disqualified a witness, necessarily assumed that the witnesses were disinterested. That qualification must, in the present state of the law, be added." (Id., 553, 554.)

Whether the assignment was ever delivered or not, or made *bona fide*, or as a mere sham, was for the jury to decide, as the only evidence in support of it was given by the plaintiff himself and the assignor. The court was, therefore, right in declining to direct a verdict and in refusing to charge that there was no evidence to overcome the presumption of the *bona fide* character of the assignment and that the testimony of the witnesses sustained it. If there was no delivery of the assignment, or it was a mere ruse or sham, the plaintiff was not the party in interest and he was not entitled to recover. The jury must have found one of these facts against the plaintiff for they could not otherwise have rendered a verdict for the defendant.

Upon the cross-examination of the original plaintiff he was asked whether he had not been sued by the defendant after he commenced this action, for $350,000. This was objected to in general terms and the court allowed the answer to be taken. The plaintiff's counsel excepted to the ruling and the witness answered that he had been. He was then asked whether it was not subse-

quent to that he made the assignment, and he answered that it was. A like objection was taken to this question and the ruling of the court allowing it to be answered was excepted to. As it was claimed by the defendant that no actual or real assignment had been made of the demands in suit, this evidence seems to have been proper. It tended to render it probable that the transaction was only a colorable one made to avoid some possible effect of a recovery against the witness. The evidence was also proper to show that he was still a party in interest in the case, and that, if true, would tend to impair his credit as a witness.

No sufficient reason has been found for a reversal of the judgment, or of the order denying the motion made for a new trial. Both should accordingly be affirmed.

Davis, P. J. :

The evidence showed that Jones had been sued by the defendant for $350,000, and afterwards assigned the claim for which this action was then pending, to the present plaintiff. That fact alone threw a shadow of suspicion upon the *bona fides* of the assignment, for it was claimed by the defendant that the assignment was made to escape the possible consequences of a recovery by the defendant, and the right that might arise to extinguish the demand in this action by set-off. The jury under such circumstances had a right to scrutinize the testimony of plaintiff touching the assignment, with strictness; and to discredit it if they believed the assignment to have been made in bad faith. To say that the jury *must* take the testimony of an interested party as true without qualification, because some other witness does not contradict it by direct testimony, is not only to trench on the province of the jury, *but to dissipate all distinction between the testimony of disinterested witnesses,* and those whose interest in a recovery extends to the whole subject-matter of the action. This would be against the policy of the common law, and no statute has yet gone the length of establishing such a rule. There is nothing improbable or inconsistent with the nature of things in the conclusion reached by the jury. It requires some effort of credibility to believe that the assignment was made in good faith, upon a *bona fide* sale of the claim in litigation. Men are not prone to purchase law suits, and

the jury might well have supposed that the present plaintiff, had consented to become a mere *locum tenens* of the real plaintiff, inasmuch as he himself did not venture upon any corroboration of the alleged assignment.

I must therefor concur with my brother Daniels.

Brady, J. (dissenting):

There is no conflict of evidence, in this case, on the subject of the assignment of the claim of Jones to the plaintiff.

The only way to discredit the testimony relating to it, is to reject it upon the presumption that it is false, to assume that the statement made by the witness is untrue. The courts have not gone so far as to allow this to be done. In the case in 45 New York, referred to by Justice Daniels, there was evidence presumptive in character against the defendants, and the question was, whether the positive evidence given in their behalf overcame the presumption or *prima facie* evidence against them. That case did not present the question whether the jury could disregard evidence wholly uncontradicted.

In *Lomer* v. *Meeker* (25 N. Y., 363), Smith, J., said: " The positive testimony of an unimpeached, uncontradicted witness, cannot be disregarded by court or jury arbitrarily or capriciously; " and in the case in 45 New York, Justice Rapallo states the rule to be, that such testimony should be credited and have the effect of overcoming a mere presumption. In this case there was nothing to overcome; no presumption except such as might be created by the evidence itself.

There was nothing to gainsay it. It will also be perceived on a careful perusal of Judge Rapallo's opinion, that his deductions are based not on intrinsic, inherent improbability or falsity in the statement alone, but rest upon the presence of facts and circumstances disclosed by other evidence which create presumptions in conflict with, or contradictory of positive evidence given, and thus two elements, not one only, are considered. The circumstances disclosed by Sheridan in reference to the assignment may have been suspicious, but many transactions which bear such an impress have been honest and so declared by courts of justice. When the assignor, Jones, was put upon the stand he was not interrogated by the

defendants' counsel in relation to the assignment; no questions were asked him on the subject.

This left the statements of the other witnesses uncontradicted and the jury could not arbitrarily reject their testimony.

There was no pretense of fraud against the claim itself and nothing to warrant the conclusion that the plaintiff had sworn falsely.

I think a new trial should be granted.

Judgment and order affirmed.